No. 31,674

The Prairie State Bank et al., *Appellees,* v. S. J. Safford and E. S. Safford, doing business as S. J. Safford & Son, *Appellants* (James B. Marshall et al., *Defendants*).

(36 P. 2d 1015)

Opinion filed November 3, 1934.

D. W. *Eaton,* of Wichita, for the appellants.

R. A. *Cox,* of Augusta, and K. M. *Geddes,* of El Dorado, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by the Prairie State Bank of Augusta to foreclose a mortgage of real estate given by J. B. Marshall to secure an indebtedness secured by a previous mortgage. Safford & Son were made parties defendant. After the previous mortgage was given, Safford & Son obtained a judgment against Marshall, and the question in the case was whether, by virtue of a transaction between Marshall and the bank resulting in release of the old mortgage and execution of the new one, the judgment lien became superior to the mortgage lien. The bank prevailed, and Safford & Son appeal.

The facts of the controversy are clearly stated in findings of fact returned by the court, which are not contested. The findings are appended hereto.

Defendants contend the mortgage of December 1, 1930, was given to secure advancements made by the bank to Marshall after the judgment was rendered. The subject is covered by the thirteenth finding. The increase in the Marshall indebtedness was secured by chattel mortgages. Cash payments made on the new indebtedness should, of course, be so applied, and payments resulting from sales

of mortgaged chattels should be applied to reduction of the debt secured by the chattel mortgages. (48 C. J., p. 661, § 116.)

Even if the new mortgage had covered advancements of new money, the mortgage would still be a first lien to the extent it secured the Marshall indebtedness incurred before rendition of the judgment.

Defendants contend release of the old mortgage *ipso facto* promoted their judgment to the rank of first lien. No authorities are cited to support the contention. An effort is made to minimize the effect of the decision in the case of *Poole v. French*, 83 Kan. 281, syl. ¶ 3, 111 Pac. 488, which is strongly against the contention. Considering the contention as a new proposition, authorities are abundant to the effect that, under circumstances similar to those disclosed by the fourteenth finding, the lien for the balance of the Marshall indebtedness was not affected by release of the old mortgage. (33 A. L. R. 149, Annotation.)

Whether the reconstitution of an indebtedness and the security for it amounts to a novation, depends primarily on intention of the parties, which, when ascertained, will be carried out, if compatible with equity. In this instance, intention, which was a question of fact, has been found as a matter of fact. There was no intention to extinguish the prior lien by acceptance of the new security. The intention was the prior lien should be preserved and continued. The judgment lienholders have not changed their position and have not been prejudiced. Instead, the arrangement, pursuant to which the old mortgage was released and the new mortgage was taken, reduced considerably the amount of the lien superior to the judgment.

The sixth finding discloses no obligation of the bank to pay defendants $100 for release of their judgment lien on tract 4, which was sold, or to see that defendants were paid $100. The bank was to receive the full purchase price of the land, $2,500, which was to be credited on Marshall's indebtedness to the bank, and that was done. The fact that defendants released their judgment and accepted Marshall's no-fund check, created no equity in favor of defendants as against the bank.

Tract 1 was owned by Marshall and his wife jointly. They both executed the mortgage of June 28, 1928, for $8,250. When Mrs. Marshall died intestate, Marshall inherited a one-half interest in the tract. Defendants contend release of the mortgage caused their judgment lien to become a first lien on the interest which Marshall

acquired. This contention is disposed of by what has already been said. The taking of the new mortgage was not in satisfaction of the old mortgage, the lien of which continued, notwithstanding its release of record.

The judgment of the district court is affirmed.

### FINDINGS OF FACT

1. On and for many years prior to May 16, 1929, the following-described real estate situated in this county was owned as follows:

Tract No. 1: All that part of the east half of the southeast quarter of section 21, township 27 south, in range 5, lying south of the right of way of the St. Louis and San Francisco Railway, except fifteen acres on the south thereof, said tract containing fifty acres, more or less, was owned by James B. Marshall and Clara Marshall, his wife.

Tract No. 2: The undivided one-half interest in and to the northeast quarter of section 1, in township 27 south, in range 5, was owned by James B. Marshall.

Tract No. 3: The south half of the southwest quarter of section 15, and the west one-half of the southeast quarter of section 16, all in township 27 south, in range 5, was owned by James B. Marshall.

Tract No. 4: The undivided one-half interest in and to the seventy-seven acres lying south of the St. Louis and San Francisco Railway Company, in the west half of the southwest quarter of section 22, in township 27 south, in range 5, was owned by Clara Earll Marshall, who was the same person as Clara Marshall, the wife of James B. Marshall.

Tract No. 5: Commencing six rods east of the northwest corner of the east half of the southeast quarter of section 21, township 27 south, in range 5 east of the sixth P. M., thence east fifteen rods, thence south twenty-two rods, thence west fifteen rods, thence north twenty-two rods to the place of beginning, was owned by James B. Marshall.

James B. Marshall and J. B. Marshall are one and the same person.

2. On November 2, 1925, James B. Marshall and Clara Marshall, his wife, were indebted to the plaintiff in the sum of $6,000, and on that date executed and delivered to the plaintiff their promissory note in the sum, due two years thereafter, and on said date, to secure the payment of said note, executed and delivered to plaintiff their mortgage covering the real estate described as tracts Nos. 1, 2 and 3, which mortgage was filed for record December 1, 1925, and recorded in book 140 of mortgages at page 261.

3. On June 20, 1928, Marshall and his wife were indebted to the plaintiff in the sum of $8,250, in which sum was included the indebtedness of $6,000 mentioned above, and interest and other sums loaned by plaintiff to them; that in renewal of said indebtedness Marshall and wife on said date executed and delivered their note to plaintiff in the sum of $8,250, due in one year, and to secure said note they executed and delivered to plaintiff their mortgage covering the real estate described as tracts Nos. 1, 2, 3 and 4. This mortgage was recorded on November 3, 1928, in book 146 of mortgages at page 72.

4. On March 14, 1929, S. J. Safford and E. S. Safford, doing business as S. J. Safford & Son, obtained a judgment against James B. Marshall and Clara Marshall in the district court of this county in the sum of $3,681.75, with ten

per cent interest from said date, and the costs of said action. No appeal was ever taken from said judgment and no part of it has ever been paid.

5. On May 16, 1929, said Clara Marshall died in this county, intestate, leaving as her only heirs her husband, James. B. Marshall, and three children, to wit: Murray M. Marshall, Thelma Voelm and Mildred Marshall. That no administration was ever had upon the estate of said Clara Marshall, deceased. No effort has been made to revive said judgment against Clara Marshall and no order of revival was ever made.

6. About January, 1930, negotiations were had looking toward the sale of the real estate described as tract No. 4, and a purchaser was obtained. The plaintiff consented to release its mortgage against that tract of real estate if the proceeds from such sale were paid to it and applied on the note of James B. Marshall and Clara Marshall, which note was secured by said mortgage. S. J. Safford and E. S. Safford agreed to release their judgment lien against that tract of real estate and that the purchase price be paid to plaintiff and credited on the Marshall indebtedness if $100 was paid on their judgment. The sale of this tract was completed and, about October, 1930, the plaintiff received $2,500, which was the proceeds from the sale of this land. S. J. Safford and E. S. Safford released their judgment as to this land. James B. Marshall delivered to the Saffords his check for $100, but this check was not paid for want of funds and has never been paid. On October 13, 1930, the $2,500, as proceeds from this sale, was applied by plaintiff on the Marshall note.

7. At all times material herein James B. Marshall thought he was sole owner of all of the real estate described as tracts Nos. 1, 2, 3 and 5, and that his wife had no title or interest therein. At the time the plaintiff agreed to release said tract No. 4 from the lien of its mortgage and at the time of the execution and delivery of the note and mortgage of James B. Marshall bearing date of December 1, 1930, hereinafter referred to, said James B. Marshall, in good faith, stated and represented to the plaintiff that he was the sole owner of said tracts Nos. 1, 2, 3 and 5, and the plaintiff in good faith believed and relied upon such representations, though the record in the office of the register of deeds showed that said various tracts were owned as found and stated in these findings.

8. On December 1, 1930, James B. Marshall and Clara Marshall were indebted to the plaintiff in the sum of $7,084, a large part of which was the indebtedness evidenced by their notes dated November 2, 1925, and June 20, 1928. In renewal of said indebtedness said James B. Marshall on December 1, 1930, executed and delivered his note, due six months thereafter, in the sum of $7,084, and on said date, to secure said indebtedness, he executed and delivered to the plaintiff a mortgage covering the real estate described as tracts Nos. 1, 2, 3 and 5, which mortgage was filed for record December 3, 1930, at 8:10 a. m.

9. The plaintiff, in compliance with its agreement to release its mortgage on tract No. 4 and as a part of the agreement for the renewal of said indebtedness, executed and delivered on December 2, 1930, a release of its mortgage bearing date of June 20, 1928, which release was recorded on December 3, 1930, at 8:00 o'clock a. m.

10. On June 20, 1928, James B. Marshall executed and delivered to the

plaintiff his chattel mortgage of that date covering forty head of cows and twenty heifers, which mortgage was given as additional security for said note of $8,250 of that date which was secured by said real-estate mortgage. This chattle mortgage was filed for record November 3, 1928, and was released of record on December 3, 1930.

On May 28, 1930, J. B. Marshall executed and delivered to the plaintiff his chattel mortgage covering certain live stock and farming implements, which mortgage was given to secure the sum of $8,965.10 as evidenced by his note of that date which was secured by said chattel mortgage, and which note and chattel mortgage were given as additional security for a note of $8,250, which was secured by said real-estate mortgage dated June 20, 1928. Said chattel mortgage was filed for record on June 4, 1930, and was released on December 3, 1930.

On March 14, 1929, the date upon which judgment was rendered in favor of Safford & Son against Marshall and wife, said Marshall and wife were indebted to the plaintiff in the sum of $8,250, evidenced by the note of June 20, 1928 (and some accrued interest thereon), which note was secured by a real-estate mortgage of that date and also by the chattel mortgage of that date. Also, on March 14, 1929, James B. Marshall was indebted to the plaintiff in the sum of $410, as evidenced by his note of February 17, 1929 (and some accrued interest thereon).

11. After the rendition of the judgment in favor of Safford & Son on March 14, 1929, James B. Marshall executed and delivered to the plaintiff many other notes, some of which evidenced other and additional money loaned by plaintiff to said Marshall. Most, if not all, of these new loans were secured by chattel mortgages that specifically referred to the notes secured, and some, if not all, of them were secured by a provision in other chattel mortgages containing a provision that they would also secure other indebtedness of Marshall up to a certain specified amount. Some or all of these chattel mortgages were fore-closed by mutual consent in that the mortgaged property was sold and the proceeds applied on the indebtedness due from the Marshalls to the plaintiff. On December 1, 1930, the plaintiff gave Marshall a credit of $743.80 from the sale of mortgaged chattels, which credit was given on the $8,965.10 note or on the $7,491.20, which was being held as collateral to said note and both of which notes were being held as collateral to the note of $8,250. On March 2, 1932, the plaintiff gave the Marshalls a credit of $1,059 from the sale of mortgaged chattels, which was credited on the note of $7,228.50 which was being held as collateral to the notes of $7,179.80, $7,084, $7,491 and $8,965.10, all of which were being held as collateral to the note of $8,250.

12. After the recovery of said judgment and on the dates following the plaintiff loaned to James B. Marshall additional sums of money as follows:

| | |
|---|---|
| September 19, 1929 | $12.00 |
| April 5, 1930 | 200.00 |
| June 23, 1930 | 250.00 |
| October 13, 1930 | 619.70 |
| December 1, 1930 | 19.25 |

All of which sums were added to the amount remaining unpaid of the in-debtedness represented by the note of $8,250, and, after deducting the pay-

ments upon said indebtedness as hereinafter recited, left unpaid a total balance on December 1, 1930, of $7,084.

James B. Marshall paid and there was credited upon his indebtedness to plaintiff certain items as follows:

| | |
|---|---|
| September 11, 1929, cash | $200.00 |
| December 1, 1930, sale of chattel security | 743.80 |
| March 2, 1932, sale of chattel security | 1,059.66 |
| October 13, 1930, sale of real estate | 2,500.00 |

Said sum of $7,084 represented and included the note of $8,250 with interest thereon and the five items of additional loans made by the plaintiff to said James B. Marshall as herein found, less the four items of credit arising from cash payments, from the proceeds from sales of the chattel security and from the proceeds from the sale of one of the tracts of mortgaged real estate as herein found.

13. On March 14, 1929, the date upon which judgment was rendered in favor of Safford & Son against Marshall and wife, said Marshall and wife were indebted to the plaintiff in the sum of $8,250 and interest as evidenced by the note of June 20, 1928, which note was secured by the real-estate mortgage of that date. After the rendition of said judgment plaintiff loaned said Marshall other sums as shown by the abstract of notes prepared and offered in evidence by the plaintiff and as shown and found in finding No. 13. However, any increase in the indebtedness from the Marshalls to the plaintiff after the date of the rendition of said judgment other than the interest on said $8,250 indebtedness was secured by chattel mortgages on personal property belonging to said Marshalls, and the cash payments made by the Marshalls on such new indebtedness, together with the proceeds from the sale of mortgage chattels, were more than sufficient to repay to the plaintiff any new loans it made to the Marshalls after the rendition of said judgment. The transactions and dealings between the plaintiff and the Marshalls since the rendition of said judgment have been such that the debt of the plaintiff which it now seeks to enforce against said real estate is less than the indebtedness, with accrued interest thereon, that it held against said real estate and secured by said real-estate mortgage at the time judgment was rendered in favor of Safford & Son against the Marshalls.

14. In accepting the real-estate mortgage dated December 1, 1930, and in releasing the mortgage dated June 20, 1928, it was not the intention of the plaintiff to extinguish its lien evidenced by the last-mentioned mortgage. The execution and delivery of the mortgage of December 1, 1930, and the execution and delivery of the release of the mortgage of June 20, 1928, and the recording of such instruments was all a part of the agreement between plaintiff and Marshall to permit a sale of said 77-acre tract, and for the purpose of continuing the lien of said mortgage as to the remainder of the land therein described to secure the payment of the balance owing from James B. Marshall to the plaintiff.

15. S. J. Safford & Son never requested the plaintiff to look to or apply any chattel or real-estate security that it had to any indebtedness owing it from the Marshalls, and never attempted to acquire any lien upon any personal property owned by either of the Marshalls, until the commencement of this suit.

16. On April 12, 1932, James B. Marshall was declared a bankrupt in the United States district court and the real estate involved in this action was released and rejected as being worthless or burdensome or as being exempt to said Marshall.

17. On August 8, 1932, the plaintiff paid taxes, interest and penalties on said real estate for the years 1928 to 1931, inclusive, in the sum of $918.83.

18. All of the notes executed and delivered by James B. Marshall and wife, except those for new loans as indicated in these findings, were renewals of earlier notes and were taken and held by the plaintiff as collateral to the earlier notes which were not surrendered or canceled by the plaintiff.

19. There is a balance of $6,530.27 due and owing on the indebtedness from Marshall and wife to the plaintiff.